**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION – SINGLE SPORT/SINGLE SCHOOL (FOOTBALL) | MDL Docket No. 2492<br><br>Master Docket No. 1:16-cv-08727<br><br>This Document Relates Only To:<br><br>Case Nos. 1:16-cv-09980, 1:17-cv-1402, 1:17-cv-04975, and 1:17-cv-04978<br><br>Judge John Z. Lee<br><br>Magistrate Judge M. David Weisman |

**MOTION FOR AND MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................................2

I.    For Years, the NCAA Has Prevented Documents and Information from Being
Shared Between This MDL and Parallel State Court Cases ..........................................2

II.    MDL Plaintiffs Propound Requests for Production of Documents Produced in State
Court Litigation; NCAA Refuses to Produce Responsive Documents ........................4

    RFP No. 24 in *Rose* ......................................................................................................4

    RFP No. 19 in *Richardson*, *Langston*, and *Weston* ...................................................5

ARGUMENT ...........................................................................................................................8

I.    The Requested Discovery is Relevant .........................................................................9

II.    The NCAA's Objections Lack Merit .........................................................................11

    a.    *NCAA Has Waived Its Boilerplate Objections* ..............................................11

    b.    *Producing the Discovery Would Impose Minimal Burden* ................................12

    c.    *The Scope of the Request is Appropriate* ........................................................13

III.    Compelling Production Would Be Consistent With MDL Best Practices,
Which Encourage Coordination and Sharing of Discovery Across Related
Cases ...........................................................................................................................15

CONCLUSION .......................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**U.S. Supreme Court Cases**

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) ................................................................................14

**U.S. District Court Cases**

*Dunlavey v. Takeda Pharm. Am., Inc.*,
　　No. 6:12-CV-1162, 2012 WL 3715456 (W.D. La. Aug. 23, 2012) ...................................17

*Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*,
　　No. 17 C 3166, 2018 WL 704686 (N.D. Ill. Feb. 5, 2018) ...............................................11

*Fields v. Wright Med. Tech., Inc.*,
　　No. 4:15-CV-110-RL-JEM, 2017 WL 3048867 (N.D. Ind. July 19, 2017) .....................17

*Fudali v. Napolitano*,
　　283 F.R.D. 400 (N.D. Ill. 2012) ..............................................................11

*In re Gen. Motors LLC Ignition Switch Litig.*,
　　MDL No. 2543 (S.D.N.Y. Sept. 24, 2014) ...........................................16

*In re MetLife Demutualization Litig.*,
　　689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................17

*In Re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig. Single
　　Sport/Single School (Football)*,
　　1:16-cv-08828................................................................................14

*In re Syngenta AG MIR162 Corn Litig.*,
　　MDL No. 2591 (D. Kan. Oct. 21, 2015) .........................................16

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
　　MDL No. 2545 (N.D. Ill. Jan. 7, 2015) ...........................................16

*In re Zyprexa Prod. Liab. Litig.*,
　　671 F. Supp. 2d 397 (E.D.N.Y. 2009) ...........................................17

*Kleen Prod. LLC v. Packaging Corp. of Am.*,
　　No. 10 C 5711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013) ................................14

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
　　254 F. Supp. 3d 1007 (N.D. Ill. 2017)................................................15

*Peterson v. Wright Med. Tech., Inc.*,
　　No. 11-1330, 2013 WL 655527 (C.D. Ill. Feb. 21, 2013) ................................17

*Whitman v. State Farm Life Ins. Co.*,
No. 3:19-CV-06025-BJR, 2020 WL 5526684 (W.D. Wash. Sept. 15, 2020) ................. 17

**State Court Cases**

*Anderson v. NCAA*,
49D01-1901-CT-002954 (Marion Cty. Sup. Ct., Ind.) ................................................. 2

*Askin v. Notre Dame, et al.*,
9 CI 01063 (Jefferson Cty. Cir. Ct., Ken.) ................................................................. 2

*Brenner v. NCAA, et al.*,
19CV01516 (Multnomah Cty. Cir. Ct., Ore.) ......................................................... 2, 5

*Broecker v. NCAA, et al.*,
19AVCV00225 (L.A. Cty. Sup. Ct., Cal.) ................................................................. 2, 5

*Callison, et al. v. NCAA*,
CC-19-04842-A (Dallas Cty. Ct., Tex.) ........................................................................ 2

*Crenshaw v. NCAA*,
49D06-2006-CT-018280 (Marion Cty. Sup. Ct., Ind.) ................................................. 2

*Davis v. NCAA*,
CC-20-01121-D (Dallas Cty. Ct., Tex.) ........................................................................ 2

*Finnerty v. NCAA*,
No. 49D14-1808-CT-033896 (Sup. Ct. Marion Cty.) ............................................... 2, 5

*Finnerty v. NCAA*,
No. 20A-CT-01069 (Ind. Ct. App. Sept. 17, 2020) ...................................................... 12

*Franklin v. NCAA*,
CGC-20-5845 (San Francisco Sup. Ct., Cal.) ............................................................... 2

*Geathers, et al. v. NCAA*,
2019-CP-38-00550 (Orangeburg Cty. Ct. Common Pleas, S. Carolina) ................... 2, 5

*Geishauser v. NCAA*,
15-C-723 (Monongalia Cty. Sup. Ct., W. Va.) ........................................................... 2, 5

*Gera v. NCAA*,
20-928388 (Ct. Common Pleas Cuyahoga Cty., Ohio) ................................................ 2

*Goode, et al. v. NCAA*,
No. 2017CV00596 (Clayton Cty. Ct., Ga.) .................................................................. 2

*Hamlin, et al. v. NCAA*,
2019-CP-16-00516 (Orangeburg Cty. Ct. Common Pleas, S. Carolina) ................... 2, 5

iv

*In re Nat'l Collegiate Athletic Ass'n*,
    543 S.W.3d 487 (Tex. App. 2018) ....................................................................2

*Jarosz, et al. v. NCAA*,
    CC-20-02484-E (Dallas Cty. Ct., Tex.) .........................................................2

*Kennedy v. NCAA*,
    No. 4768-2018 (Westmoreland Cty. Ct., Pa.) ...............................................2

*Mackenzie-Schmidt v. NCAA*,
    BC718846 (L.A. Cty. Sup. Ct., Cal.) ..........................................................2, 5

*Onyshko v. NCAA*,
    2014-3620 (Washington Cty. Ct. Common Pleas, Penn.) ..........................2, 5

*Ploetz v. NCAA*,
    DC-17-00676 (District Ct. Dallas Cty., Tex.) .........................................2, 3, 5

*Schmitz, et al. v. NCAA, et al.*,
    CV-14-834486 (Cuyahoga Cty. Ct. Common Pleas, Ohio) .......................2, 5

*Schretzman, et al. v. NCAA*,
    No. 191293127 (Phila. Cty. Ct., Pa.) ............................................................2

*Solonoski v. NCAA*,
    49D01-1905-CT-021770 (Marion Cty. Sup. Ct., Ind.) ................................2

*Stensrud v. NCAA*,
    BC719516 (L.A. Cty. Sup. Ct., Cal.) ..........................................................2, 5

*Whittier v. NCAA*,
    CC-20-02912 (Dallas Cty. Ct., Tex.) .............................................................2

**Rules and Statutory Provisions**

Fed. R. Civ. P. 23.............................................................................................10

Fed. R. Civ. P. 26...............................................................................................9

Fed. R. Civ. P. 34.............................................................................................11

Fed. R. Civ. P. 37..........................................................................................1, 6

**Other Authorities**

Guidelines and Best Practices for Large and Mass-Tort MDLs (Second),
    Bolch Judicial Inst., Duke Law School, Chapter 4 (2018), https://bit.ly/3i6YVCM ........16

Judicial Panel on Multi-District Litigation and Federal Judicial Center,
*Ten Steps to Better Management: A Guide to Multi-District Litigation for Transferee Judges* ........................................................................................................................17

MANUAL FOR COMPLEX LITIGATION (FOURTH) ...........................................................17

Sample Case Plaintiffs Michael Rose, Timothy Stratton, Charles Marcus Langston, Danae Young, Jamie Richardson, and Eric Weston ("MDL Plaintiffs"), through Plaintiffs' Co-Lead Counsel, and pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), respectfully seek an order compelling Defendant National Collegiate Athletic Association ("NCAA") to produce documents responsive to RFP No. 19 served in *Langston*, *Richardson*, and *Weston*—*i.e.*, documents the NCAA has already produced in parallel state court litigation regarding football head injuries. The MDL Plaintiffs long ago requested these documents and information, but the NCAA has thus far refused to produce any responsive material, both in discussions among counsel and in its written discovery responses.

The discovery the MDL Plaintiffs request is clearly relevant to the Sample Cases and its production would impose virtually no burden on the NCAA. Moreover, two of the foundational tenets of MDL practice and discovery are coordination and efficiency. The MDL Plaintiffs' intent to coordinate discovery between this MDL and other near-identical state court proceedings reflects one of the core values of the MDL statute: increasing efficiencies across largely duplicative actions. Courts presiding over MDLs regularly order the coordination and sharing of discovery across state and federal proceedings; this coordination has been found to avoid both inefficiency and gamesmanship in discovery—*e.g.*, picking and choosing which documents are produced in which case in order to gain tactical advantages.

For all of these reasons and as explained below, the Court should order the NCAA to produce documents responsive to RFP No. 19 served in *Langston*, *Richardson*, and *Weston*.

**BACKGROUND**

I.     **For Years, the NCAA Has Prevented Documents and Information from Being Shared Between This MDL and Parallel State Court Cases.**

By way of background, since the start of this MDL track in 2016, dozens of individual lawsuits against the NCAA have also been filed by plaintiffs in state courts ("State Court Plaintiffs") around the country.[1] Those lawsuits—like this MDL—allege that the NCAA was responsible for protecting the health and safety of collegiate football players; knew of the potential risks of repetitive head impacts and concussions; failed to adequately inform players of these risks or take steps to mitigate or remove the risks; and as a result, caused serious injury to these players' health (often in the form of debilitating illnesses such as Alzheimer's and Chronic Traumatic Encephalopathy). The state court cases raise various tort and contract-based claims against the NCAA over this conduct, and at least two have proceeded to trial.[2] In many of the cases, the NCAA has produced a significant volume of documents addressing the core issues in this MDL. *See, e.g., In re Nat'l Collegiate Athletic Ass'n*, 543 S.W.3d 487, 490, 496 (Tex. App.

---

[1]     These state court cases include but are not necessarily limited to: *Gera v. NCAA*, 20-928388 (Ct. Common Pleas Cuyahoga Cty., Ohio); *Askin v. Notre Dame, et al.*, 19 CI 01063 (Jefferson Cty. Cir. Ct., Ken.); *Finnerty v. NCAA*, 49D14-1808-CT-033896 (Sup. Ct. Marion Cty., Ind.); *Broecker v. NCAA, et al.*, 19AVCV00225 (L.A. Cty. Sup. Ct., Cal.); *Stensrud v. NCAA*, BC719516 (L.A. Cty. Sup. Ct., Cal.); *Mackenzie-Schmidt v. NCAA*, BC718846 (L.A. Cty. Sup. Ct., Cal.); *Geathers, et al. v. NCAA*, 2019-CP-38-00550 (Orangeburg Cty. Ct. Common Pleas, S. Carolina); *Hamlin, et al. v. NCAA*, 2019-CP-16-00516 (Orangeburg Cty. Ct. Common Pleas, S. Carolina); *Schmitz, et al. v. NCAA, et al.*, CV-14-834486 (Cuyahoga Cty. Ct. Common Pleas, Ohio); *Brenner v. NCAA, et al.*, 19CV01516 (Multnomah Cty. Cir. Ct., Ore.); *Franklin v. NCAA*, CGC-20-5845 (San Francisco Sup. Ct., Cal.); *Whittier v. NCAA*, CC-20-02912 (Dallas Cty. Ct., Tex.); *Solonoski v. NCAA*, 49D01-1905-CT-021770 (Marion Cty. Sup. Ct., Ind.); *Anderson v. NCAA*, 49D01-1901-CT-002954 (Marion Cty. Sup. Ct., Ind.); *Ploetz v. NCAA*, DC-17-00676 (District Ct. Dallas Cty., Tex. ); *Onyshko v. NCAA*, 2014-3620 (Washington Cty. Ct. Common Pleas, Penn.); *Geishauser v. NCAA*, 15-C-723 (Monongalia Cty. Sup. Ct., W. Va.); *Callison, et al. v. NCAA*, CC-19-04842-A (Dallas Cty. Ct., Tex.); *Davis v. NCAA*, CC-20-01121-D (Dallas Cty. Ct., Tex.); *Kennedy v. NCAA*, CC-20-02484-E (Dallas Cty. Ct., Tex.); *Schretzman, et al. v. NCAA*, No. 191293127 (Phila. Cty. Ct., Pa.); *Jarosz, et al. v. NCAA*, No. 4768-2018 (Westmoreland Cty. Ct., Pa.); *Crenshaw v. NCAA*, 49D06-2006-CT-018280 (Marion Cty. Sup. Ct., Ind.); *Goode, et al. v. NCAA*, No. 2017CV00596 (Clayton Cty. Ct., Ga.).

[2]     *See Ploetz*, DC-17-00676 (settled mid-trial); *Onyshko*, 2014-3620 (defense verdict).

2018) (noting NCAA statement that it had produced "35,000 pages" of documents in the *Geishauser* litigation and ordering the NCAA to produce documents for an even broader period of time in the *Ploetz* case). The NCAA has refused to produce those documents in this MDL, and consequently MDL Plaintiffs are filing this motion seeking to compel the NCAA to produce here the documents it already produced in those state court cases.

To be clear, just as the NCAA has refused to allow MDL Plaintiffs access to the documents it produced in the state court cases, the State Court Plaintiffs have similarly been prohibited from accessing a wide swath of documents produced by the NCAA in this MDL. That is because while the Confidentiality Order in place for this MDL does not prohibit MDL Plaintiffs from sharing non-confidential documents obtained in this litigation with third parties, *see* dkt. 138 at 5-7, the NCAA has designated thousands of documents as "Confidential" or "Attorney's Eyes Only."[3] Consequently, the thousands of "Confidential" and "Attorney's Eyes Only" documents produced in this MDL are currently siloed off from attorneys working on virtually identical cases against the NCAA in state court.

What this background illustrates is that the NCAA has, for years, engaged in a concerted effort to wall off each state court case from one another, and then wall off all of those balkanized state court cases from this MDL. *See, e.g.*, Declaration of Benjamin H. Richman ("Richman Decl.") ¶ 3; Ex. 1, Letter from Will Stute to Robert T. Dassow (Nov. 8, 2018) (NCAA "will not produce documents previously produced in other matters"). Through this motion, MDL Plaintiffs seek to remedy one aspect of this unfortunate gamesmanship, allowing state court documents to

---

[3] For example, the NCAA produced approximately 6,000 documents in response to the MDL Plaintiffs' first set of RFPs in the *Rose et al. v. NCAA et al.* Sample Case and designated more than 1,000 of those documents as "Confidential" or "Attorney's Eyes Only." Similarly, in the earlier *Arrington* litigation, NCAA designated tens of thousands of documents as "Confidential" or "Attorney's Eyes Only."

flow to this MDL. At a further appropriate time, MDL Plaintiffs anticipate seeking additional

relief from the Court that would allow additional documents to flow from this MDL to State

Court Plaintiffs.

**II.     MDL Plaintiffs Propound Requests for Production of Documents Produced in State
         Court Litigation; NCAA Refuses to Produce Responsive Documents.**

Plaintiffs Rose and Stratton propounded their first set of requests for production ("RFP"s)

on the NCAA on November 9, 2018. *See* Richman Decl. ¶ 4; Ex. 2, Rose's First Set of RFPs.

RFP No. 24 sought the following:

**RFP No. 24 in *Rose***

All Documents You produced in any other civil action or any other action, investigation
or proceedings Relating To Head Injuries, Concussion Symptoms, and/or Concussion-
Related Disorders.

*See* Ex. 2 at 15. The NCAA provided the following response:

The NCAA incorporates General Objections 1-4, 6, 10-21 and 23 as and for its
response to Request No. 24. The NCAA further objects to Request No. 24 as: (a) overly
broad, unduly burdensome and/or requiring undue expense to answer; (b) seeking
documents and/or information that are neither relevant nor proportional to the needs of
the case, particularly documents and/or information regarding persons not included in
Plaintiffs' proposed class definition and/or member institutions other than Purdue
University; (c) cumulative and/or duplicative and (d) seeking material and/or information
that are outside of the current scope of discovery in that they are not related to issues of
class certification.

Subject to and without waiving the foregoing objections, the NCAA states that it
will produce documents located after a good-faith, reasonable search, if any, that have
already been produced in other civil actions involving allegations of concussions, to the
extent that such documents are relevant to the present action.

*See* Richman Decl. ¶ 5; Ex. 3 at 22, NCAA's Responses to Rose's RFPs. Though the NCAA

indicated almost two years ago that it would produce responsive documents, it has yet to turn

over even a single production from any prior cases. *See* Richman Decl. ¶ 6.

4

Plaintiffs Langston, Young, Richardson, and Weston propounded their own RFPs on

August 17, 2020, and the NCAA responded to each on September 23, 2020.[4] *See id.* ¶ 7; Ex. 4,

Richardson's First Set of RFPs. RFP No. 19 in each of these cases requested the following:

### RFP No. 19 in *Richardson*, *Langston*, and *Weston*

Any and all Documents, whether designated as confidential in any manner pursuant to a protective and/or confidentiality order, that were produced to any plaintiff by You, in one or more of the following cases:

- *Finnerty v. NCAA*, No. 49D14-1808-CT-033896 (Sup. Ct. Marion Cty.);
- *Ploetz v. NCAA*, No. DC-17-00676 (Dist. Ct. Dallas Cty.);
- *Broecker v. NCAA, et al.*, No. 19AVCV00225 (L.A. Cty. Sup. Ct.);
- *Stensrud v. NCAA*, No. BC719516 (L.A. Cty. Sup. Ct.);
- *Mackenzie-Schmidt v. NCAA*, No. BC718846 (L.A. Cty. Sup. Ct.);
- *Geishauser v. NCAA*, No. 15-C-723 (Cir. Ct. Monongalia Cty.);
- *Geathers, et al. v. NCAA*, No. 2019-CP-38-00550 (Orangeburg Cty. Ct. Common Pleas);
- *Hamlin, et al. v. NCAA*, No. 2019-CP-16-00516 (Orangeburg Cty. Ct. Common Pleas);
- *Schmitz, et al. v. NCAA, et al.*, No. CV-14-834486 (Cuyahoga Cty. Ct. Common Pleas);
- *Brenner v. NCAA, et al.*, No. 19CV01516 (Cir. Ct. Multnomah Cty.);
- *Hill v. Slippery Rock Univ. et al.*, No. 180 WDA 2015 (Sup. Ct. Pa.);
- *Onyshko v. NCAA*, No. 2014-3620 (Washington Cty. Ct. Common Pleas); and
- every other lawsuit initiated in state court against the NCAA between January 1, 2010 and the present alleging the NCAA's violation of a duty of care to one or more student-athletes, in relation to (i) the sport of football, and (ii) Head Injuries.

For purposes of this Request, and in lieu of requiring NCAA to produce any Documents directly, Plaintiff will accept a stipulation from NCAA providing that (i) the NCAA approves and grants Plaintiff access to all Documents responsive to this Request; (ii) the NCAA authorizes Plaintiff's counsel to obtain all responsive Documents directly from counsel representing the plaintiffs in the above-named cases, (iii) any protective and/or confidentiality order entered in the above-named cases does not and shall not limit Plaintiff's or his counsel's right to access those Documents, and (iv) Plaintiff may use these Documents to the extent and in the same manner allowed under any protective and/or confidentiality order entered in this case.

---

[4] The Plaintiffs in *Richardson*, *Langston*, and *Weston* propounded substantively identical RFPs—the only differences were the names of plaintiffs, colleges, and conferences. The NCAA gave substantively identical responses and objections to those RFPs in each case. The same is true for RFP No. 19 and the NCAA's response across the three cases: the only differences are the name of the college and the references to "Plaintiff" or "Plaintiffs."

*See* Ex. 4 at 14-16.

The NCAA gave a substantively identical response in each of these three Sample Cases, raising a series of objections and declining to indicate whether it would produce any responsive documents:

> The NCAA incorporates General Objections 1, 3, 5, 7, 10, 13-23 and 25 as and for its response to Request No. 19. The NCAA further objects to Request No. 19 as: (a) overly broad, unduly burdensome and/or requiring undue expense to answer; (b) seeking documents and/or information not relevant and/or proportional to the needs of the case, particularly (i) documents and/or information regarding persons not included in Plaintiff's proposed class definition and/or member institutions other than [Plaintiff's University], (ii) documents and/or information not related to the sport of football and head injuries; (c) cumulative and/or duplicative; (d) seeking material and/or information that are outside of the current scope of discovery in that they are not related to issues of class certification; (e) seeking material and/or information from outside of the class period stated in Plaintiff's Complaint; and (f) seeking impermissible clone discovery.

*See* Richman Decl. ¶ 8, Ex. 5 at 21-22, NCAA's Objections and Responses to Richardson's RFPs.

As required by Fed. R. Civ. P. 37(a)(1), the MDL Plaintiffs have conferred extensively and in good faith with the NCAA's counsel in an effort to obtain documents and information responsive to RFP No. 19 in *Richardson*, *Langston*, and *Weston*. *See* Richman Decl. ¶ 9. Specifically, MDL Plaintiffs' counsel first conferred telephonically with the NCAA's counsel on August 21, 2020 regarding the MDL Plaintiffs' first sets of discovery requests, including the request for documents produced in related state court cases. *See* Richman Decl. ¶ 10. On that call, the NCAA's counsel questioned the relevance of discovery in the parallel state court proceedings to the MDL litigation, and did not agree to produce responsive documents, instead representing that the NCAA would express its ultimate position on this issue in its written responses to Request for Production 19. *Id.* ¶ 6. The NCAA then sent a letter on September 25, 2020 addressing the request for state court documents, reiterating the NCAA's objections to that

request and making an onerous proposal that would have required, among other things, MDL Plaintiffs to obtain some unexplained form of "release" from each State Court Plaintiff. *See* Ex. 6, Letter from Johanna Spellman to Benjamin Richman *et al.* (Sept. 25, 2020). ("There is no justification for requiring the NCAA to reproduce all documents it produced in the state court cases.").

MDL Plaintiffs responded in writing in December 2020, noting that the parties had reached an impasse and that MDL Plaintiffs intended to file a motion to compel. *See* Richman Decl. ¶ 12; Ex. 7, Letter from Todd Logan to NCAA (Dec. 31, 2020). The Parties then telephonically met again on January 15, 2021. *See* Richman Decl. ¶ 13. During that call, despite repeated requests, NCAA's counsel did not agree to produce documents responsive to RFP. No. 19. *Id.* On January 19, 2021, MDL Plaintiffs wrote the NCAA an email confirming that "the NCAA still has not agreed to produce documents responsive to RFP 19" and that while the NCAA "may want to continue to try to negotiate some sort of private agreement on this issue," MDL Plaintiffs "do not believe those discussions are likely to prove productive" and consequently "anticipate[d] filing a motion to compel as soon as this week." *See* Richman Decl. ¶ 14; Ex. 8, Email from Todd Logan to Johanna Spellman (Jan. 19, 2021).

On January 20, 2021, NCAA's counsel sent another letter on the subject of RFP No. 19, suggesting that the NCAA was "willing to consider" an agreement in which MDL Plaintiffs could access state court documents provided that MDL Plaintiffs' Counsel, among other things would "obtain from the state court plaintiffs and/or third parties whatever releases would be necessary to allow the parties in the sample cases to access and use those documents and deposition transcripts." *See* Richman Decl. ¶ 15; Ex. 9, Letter from Johanna Spellman to Todd Logan (Jan. 20, 2021). MDL Plaintiffs responded by email the next day, promising to refrain

from filing a motion if the NCAA made "a concrete proposal laying out the date certain by which it will complete its (proposed) productions of responsive documents." *See* Richman Decl. ¶ 16; Ex. 10, Email from Todd Logan to Johanna Spellman (Jan. 21, 2021). The NCAA failed to make such a proposal. Instead, it sent yet another letter, this time proposing that—if certain conditions were met—the NCAA would at some unstated point in the future produce a certain subset of state court documents, subject to various unacceptable filters unilaterally imposed by the NCAA, including regarding subject matter and temporal scope. *See* Richman Decl. ¶ 17; Ex. 11, Letter from Johanna Spellman to Todd Logan (Jan. 27, 2021). To date, the NCAA has not produced a single document responsive to RFP No. 19 in *Richardson*, *Langston*, and *Weston*. Richman Decl. ¶ 18.

Enough is enough. Because the MDL Plaintiffs are unable to resolve this dispute after conferring with the NCAA in good faith, they now seek a court order compelling, across all four Sample Cases, production of documents responsive to RFP No. 19 issued in *Langston, Richardson,* and *Weston*.[5]

## **ARGUMENT**

The MDL Plaintiffs seek discovery of documents and information already produced in virtually identical state court lawsuits against the NCAA. These documents are clearly relevant and producing them will impose hardly any burden on the NCAA, since the NCAA has already made these productions and is litigating these individual cases under the direction of common, coordinating defense counsel. In other words, the NCAA already has these documents at its fingertips. Finally, MDL best practices encourage coordination of discovery between MDL

---

[5]     In the interest of efficiency, MDL Plaintiffs do not—through this motion—separately seek production of documents responsive to the more broad RFP No. 24 in *Rose*.

proceedings and related cases, including cases in state court, because such coordination avoids inefficiency and gamesmanship.

## I.     The Requested Discovery is Relevant.

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Information . . . need not be admissible in evidence to be discoverable," *id.*, and the burden is on the party opposing discovery to show why a particular request is improper, *see Mann v. City of Chicago*, No. 13 CV 4531, 2017 WL 3970592, at *2 (N.D. Ill. Sept. 8, 2017).

The requested documents are clearly relevant to the MDL Plaintiffs' cases. RFP No. 19 seeks document productions from a specific set of state court cases initiated after January 1, 2010 in which the NCAA was sued for "violat[ing] a duty of care to one or more student-athletes, in relation to (i) the sport of football, and (ii) Head Injuries." Ex. 4 at 15. These state court cases present almost precisely the same factual and legal questions as this MDL does, such as the NCAA's responsibility for protecting the health and safety of collegiate football players, whether the NCAA knew of the potential risks of repetitive head impacts and concussions, whether the NCAA adequately informed players of these risks or took steps to limit or remove the risks, and whether the NCAA's conduct caused serious injury to players' health. The state cases bring various tort and contract-based claims against the NCAA, and all four of the Sample Cases in this MDL contain similar allegations and theories of recovery as the state cases do.

The requests are also relevant to the current phase of discovery. The Court ordered that the first phase of discovery in the Sample Cases would be "fact discovery on issues relating to class certification," and that the parties would finish remaining discovery after the Court's ruling

on any motion(s) for class certification. *See* Case Mgmt. Order No. 8, dkt. 259 (adopting the parties' proposed schedule). The issues at play in the state court cases are relevant to class certification issues in this MDL. For example, documents produced in the state court cases are highly likely to bear on whether the NCAA owed a common duty of care to collegiate football players in relation to Head Injuries and whether the NCAA breached that duty in a common way. The documents are also likely to shed light on the NCAA's knowledge of the relevant head injury risks at various times, the NCAA's on-campus presence in support of its governance of collegiate football at various times, the NCAA's rulemaking related to the prevention or reduction of head injuries at various times, and the representations the NCAA may have made to both student-athletes and their universities related to head injury risks and the NCAA's responsibility to limit them. These matters all relate to class certification under Fed. R. Civ. P. 23 and more specifically to commonality, predominance, and the potential necessity for subclasses in this MDL (*e.g.*, potential subclasses for different periods of time).

In any event, the parties requested and the Court ordered an initial phase of discovery focused on "issues relating to class certification," *id.*, in order to promote efficiency—*e.g.*, to allow the parties to delay dealing with discovery on purely merits issues until after the Court's ruling on class certification. And as discussed below, the NCAA has already prepared and served the sought-after productions in the related state cases, so there is no efficiency to be gained by attempting to divide those productions into class-certification-related documents and merits-related documents. RFP No. 19 (and RFP No. 24 in *Rose*) seeks documents highly likely to contain information relevant to class certification; the fact that there may be relevant, merits-related documents mixed in does not justify the NCAA's withholding these documents at this stage of the litigation.

## II.       The NCAA's Objections Lack Merit.

Because the MDL Plaintiffs' request seeks relevant information, the burden is on the

NCAA to show why RFP No. 19 is improper. *Mann*, 2017 WL 3970592, at *2 (explaining that

though relevance is a "precondition to discovery," "the burden is upon the objecting party to

show why a discovery request is improper"). The NCAA's response to RFP No. 19 attempts to

incorporate 17 general objections and lodges 6 additional ones.[6] None of these objections hold

water. Because the NCAA's objections lack merit, the Court should compel NCAA to complete

production of documents responsive to the MDL Plaintiffs' request.

### a.       *NCAA Has Waived Its Boilerplate Objections.*

First, in response to RFP No. 19, NCAA "incorporates General Objections 1, 3, 5, 7, 10,

13-23 and 25 as and for its response to Request No. 19."[7] Ex. 5 at 21. The NCAA does not add

any additional information or explanation as to how these general objections apply to this

particular request. Each of these general objections is an invalid boilerplate objection, since the

NCAA fails to "state with specificity the grounds for objecting to the request, including the

reasons," as required by Fed. R. Civ. P. 34(b)(2)(B); *see also Duracell U.S. Operations, Inc. v.*

*JRS Ventures, Inc.*, No. 17 C 3166, 2018 WL 704686, at *8 (N.D. Ill. Feb. 5, 2018) (Boilerplate

objections are "essentially no objection at all."); *Fudali v. Napolitano*, 283 F.R.D. 400, 403

(N.D. Ill. 2012) (noting that "the cases are clear that these sorts of boilerplate objections are

---

[6]       The NCAA's response to RFP No. 24 in *Rose* attempted to incorporate 18 general objections and lodge 4 additional ones. For the same reasons discussed below with respect to RFP No. 19, the boilerplate general objections should be deemed waived. The NCAA's specific objections to RFP No. 24 are all contained within the specific objections to RFP No. 19 and are therefore discussed below.

[7]       These general objections include objections to various definitions and instructions in the MDL Plaintiffs' RFPs and to the requests "to the extent they fail to specify a relevant sport or NCAA Division" or "to the extent they seek confidential materials." Ex. 5 at 2-7.

ineffectual"). Because it does not explain how any of these general objections relate to RFP No. 19, the NCAA has and should be deemed to have waived these objections.

b.    *Producing the Discovery Would Impose Minimal Burden.*

NCAA further objects to RFP No. 19 on that ground that it is "overly broad, unduly burdensome and/or requiring undue expense to answer." Ex. 5 at 21. The NCAA does not explain why producing these documents would be burdensome, and, in fact, the NCAA has these documents already at its fingertips. In a recent court filing in one of the state court cases, the NCAA stated that it is litigating all these related head injury cases pursuant to a common strategy and shared organizational structure. Specifically, NCAA represented as follows in requesting an extension of time to file an appellate brief:

> This case is one of many in which the NCAA has been sued—both in Indiana and nationwide—regarding alleged head injuries from college sports. These cases are being litigated by teams of counsel at multiple law firms, including Orrick Herrington & Sutcliffe LLP and Faegre Drinker Biddle & Reath LLP. The nationwide litigation is being coordinated by counsel at Bryan Cave Leighton Paisner LLP, as well as the NCAA's own in-house counsel. Thus, in order to ensure a consistent presentation of the NCAA's positions in this large-scale litigation, the NCAA's appeal brief will need to be carefully reviewed by a broader team of attorneys than in the vast majority of other cases.

Richman Decl. ¶ 19; Ex. 12, Motion for Extension of Time, at 3, *Finnerty v. NCAA*, No. 20A-CT-01069 (Ind. Ct. App. Sept. 17, 2020). This leaves little room for doubt that the NCAA has produced documents in extremely similar cases under the direction of common, coordinating counsel (at the Bryan Cave law firm) and that its document productions in each state court litigation are easily accessible and producible. The NCAA has already collected, packaged, and produced these documents in other cases; it presents virtually no burden on the NCAA's coordinated counsel to share those productions with the MDL Plaintiffs. Furthermore, MDL Plaintiffs previously offered to obtain these state court productions themselves—*e.g.*, from the

State Court Plaintiffs' counsel—but the NCAA also refused that option. NCAA's claims of burden are, therefore, unconvincing.

### c.    *The Scope of the Request is Appropriate.*

The NCAA also objects on the grounds that RFP No. 19 is overly broad, disproportionate to the needs of the case, cumulative and/or duplicative, and seeking material outside the current scope of discovery and outside the class period. These objections should be overruled because RFP No. 19 requests documents squarely within the current scope of discovery.

*First*, contrary to the NCAA's contention that the request seeks "documents and/or information not related to the sport of football and head injuries," Ex. 5 at 21-22, the request is in fact explicitly focused on cases involving "football" and "Head Injuries." Ex. 4 at 15. The NCAA's objection that the request seeks "documents and/or information regarding persons not included in Plaintiff's proposed class definition and/or member institutions other than [MDL Plaintiff's University]," Ex. 5 at 21, is also meritless since the MDL Plaintiffs are in no way prohibited from seeking discovery about individuals outside the classes proposed in the sample complaints, especially where such information is relevant to class certification and to common factual issues among all football head injury lawsuits against the NCAA. For example, if the NCAA produced a policy document relating to football head injuries in a state case involving a college not involved in any of the Sample Cases, that document would still be relevant to class certification in the Sample Cases. Such a document would bear on issues such as whether the NCAA followed nationwide policies, patterns, or practices, or whether it followed different policies, patterns, or practices for different conferences or different schools.

Nor are the MDL Plaintiffs prohibited from seeking material from outside the class period; such discovery could certainly bear on class certification. As just one example, the

NCAA's 1933 Sports Medicine Handbook, which warned of connections between football and "punch drunk" syndrome, is obviously relevant to the NCAA's knowledge of head injury risks over time and the question of whether a fraudulent concealment class could be certified—but falls outside the currently-pled class periods. Similarly, the NCAA's statements in 2012 about its prior knowledge, policies, and practices regarding head injuries are relevant to the predominance inquiry and the potential need for subclasses. Thus, materials from both before and after the class period are discoverable. *See, e.g.*, *Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013) (allowing "larger window" of outside-class-period discovery, highlighting Defendants' failure to establish burden of production and Plaintiffs' legitimate interest in "before" and "after" effects of Defendants' alleged misconduct).

*Second*, the NCAA's objection that RFP No. 19 does not relate to "issues of class certification" should be overruled. As described above, the Request does seek documents highly likely to bear on Rule 23 issues. The state court productions are also likely to contain materials relevant to the MDL Plaintiffs' eventual substantive cases, but many of these substantive issues overlap with class certification issues. For example, information about NCAA's knowledge of the risks of head injuries over time bears both on the need for subclasses and also on NCAA's alleged negligence and concealment of material facts. The Court ordered that discovery in the Sample Cases should focus on Rule 23 class issues *as well as* overlapping class and merits issues. *See In Re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig. Single Sport/Single School (Football)*, 1:16-cv-08828, dkt. 91, at 5; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (Noting that the "rigorous analysis" required by Rule 23 "frequently . . . will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in

14

the factual and legal issues comprising the plaintiff's cause of action.") (internal quotations and citations omitted). Moreover, it would surely be more burdensome on the NCAA to parse the state court productions to produce some documents now and other documents at a later phase of discovery. Never mind the disputes that such an approach would likely generate over what does or does not sufficiently relate to class certification issues. The MDL Plaintiffs' request for all documents produced in state court cases involving head injuries in collegiate football is within the scope of this phase of discovery and also a more efficient approach—particularly from the NCAA's perspective.

Finally, the NCAA's objection that the request is "cumulative and/or duplicative" is meritless. The MDL Plaintiffs have not previously requested access to these state court materials through another RFP, so RFP No. 19 is not a cumulative request. There may be overlap between the documents produced in state court cases and the documents produced in this MDL, but neither the MDL Plaintiffs nor the Court have any way of knowing how much overlap there is. NCAA holds all the cards, here, through its centralized litigation team, and currently has the ability to pick and choose which documents it produces in which cases and the ability to keep these productions siloed. The federal rules do not permit such a one-sided approach to discovery.

**III. Compelling Production Would Be Consistent With MDL Best Practices, Which Encourage Coordination and Sharing of Discovery Across Related Cases.**

Compelling the NCAA to respond to RFP No. 19 will also serve the interests of efficiency and justice, allowing for a full and accurate record of the NCAA's relevant conduct to be developed for this case and for those pending around the country. *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1024 (N.D. Ill. 2017) (Collecting cases for the proposition that "[t]he purpose of discovery is integral to the quest for truth[.]"). RFP No.

19 does not seek "impermissible clone discovery" as the NCAA claims. Ex. 5 at 22. In fact,

MDL best practices encourage courts to coordinate discovery among different cases:

> Best Practice 6H: The transferee judge can also promote coordination through its supervision of the litigation process; for example, the court may encourage the parties to establish a common discovery-product depository (now most frequently a password-protected online collection rather than a physical depository) to avoid duplicative efforts.

Guidelines and Best Practices for Large and Mass-Tort MDLs (Second), Bolch Judicial Inst.,

Duke Law School, Chapter 4, at 103 (2018), https://bit.ly/3i6YVCM; *see also, e.g.*, Joint

Coordination Order, *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543, dkt. 315

(S.D.N.Y. Sept. 24, 2014) ("The MDL Court expects counsel for parties in the MDL proceeding

to help ensure that such coordination is achieved wherever it is practicable[.]"); Amended Case

Management Order No. 17, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL

No. 2545, dkt. 542 (N.D. Ill. Jan. 7, 2015) ("The State-Federal Liaison Counsel for plaintiffs and

each defendant shall use their best efforts to coordinate discovery and case schedules in the MDL

proceeding with discovery and case schedules in the state court cases, in order to enhance

efficiency and avoid undue duplication of effort and unwarranted expense."); Coordination

Order, *In re Syngenta AG MIR162 Corn Litig.*, MDL No. 2591, dkt. 1099 (D. Kan. Oct. 21,

2015) ("The coordination of pretrial proceedings in the MDL Proceeding" and in "thousands" of

related cases on file in state courts "will likely minimize undue duplication of discovery and

undue burden on courts, parties, and non-parties in responding to discovery requests, save

substantial expense by the parties and non-parties, and produce substantial savings in judicial

resources.").

   Where, as in this case, there is a federal court presiding over an MDL and state courts

presiding over substantially related litigation, the courts regularly coordinate on discovery

matters in order "to reduce costs, delays, and [the] duplication of effort." *Dunlavey v. Takeda Pharm. Am., Inc.*, No. 6:12-CV-1162, 2012 WL 3715456, at *2 (W.D. La. Aug. 23, 2012) (alteration in original) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 20.31, 22.4 (2004)); *see also In re Zyprexa Prod. Liab. Litig.*, 671 F. Supp. 2d 397, 403 (E.D.N.Y. 2009) (noting positively that "[c]ooperation between federal and state courts has been encouraged at all stages of the *Zyprexa* litigation."). It is "the policy of the federal courts to encourage coordination of pending state and federal cases" concerning the same subject matter. *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 307 (E.D.N.Y. 2010). Inter-system cooperation and interaction between an MDL and parallel state proceedings is efficient and serves to move the parallel tracks of litigation forward as a whole. *See* Judicial Panel on Multi-District Litigation and Federal Judicial Center, *Ten Steps to Better Management: A Guide to Multi-District Litigation for Transferee Judges*, at 7 (2014) ("Discovery is one area that is quite amenable to effective coordination.").

A request for "cloned" discovery is proper where the request "seeks information that is relevant to plaintiff's claims and defendants' defenses and [] is reasonably calculated to lead to the discovery of admissible evidence on the questions of what [Defendant] knew and when[.]" *Peterson v. Wright Med. Tech., Inc.*, No. 11-1330, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013); *see also Fields v. Wright Med. Tech., Inc.*, No. 4:15-CV-110-RL-JEM, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-CV-06025-BJR, 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020) (granting motion to compel cloned discovery where two lawsuits had "significant factual and legal overlap, with both suits against the same defendant asserting almost identical claims based on the same alleged

misconduct"). This MDL and the related state court cases certainly have "significant factual and legal overlap," so RFP No. 19 is a proper request.

Therefore, even beyond the shortcomings of the NCAA's objections to RFP No. 19, good cause exists to allow the free sharing of discovery between this MDL and substantially similar state court litigation. Many documents are likely to be relevant to all related actions, such as those that relate to the functioning of the NCAA, its regulation of collegiate football, and its knowledge of the risks of repetitive head injury over the years. Allowing MDL Plaintiffs to access documents the NCAA has already produced in one or more related state cases will serve the interests of efficiency, improve the effectiveness of discovery's truth-seeking function in these cases, and ease burdens on the NCAA overall.

On the other hand, permitting document productions to remain siloed risks an extraordinary overduplication of discovery efforts and creates the opportunity for NCAA to pick and choose which documents it produces in which cases. Such an approach would hinder the truth-seeking function of discovery and create a risk of inconsistent judgments based on divergent discovery in different cases—perhaps based on minor wording variations in a discovery request, an individual athlete's specific years of play, or some other inconsequential difference.

## CONCLUSION

For all of these reasons and as explained below, the Court should order the NCAA to produce documents responsive to RFP No. 19 served in *Langston*, *Richardson*, and *Weston*.

Respectfully submitted,

Dated: February 5, 2021                By: /s/Benjamin H. Richman
                                            *Co-Lead Counsel for MDL Plaintiffs*

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Amy B. Hausmann
abhausmann@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
Todd Logan
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Tel: 415.212.9300
Fax: 415.373.9435

Sol Weiss
sweiss@anapolweiss.com
ANAPOL WEISS
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, Pennsylvania 19103
Tel: 215.735.2098
Fax: 215.875.7701

## CERTIFICATE OF CONSULTATION

I, Benjamin H. Richman hereby certify that the above and foregoing Motion was only filed following a good faith effort to resolve differences of opinion over the contents of this Motion, and to come to a reasonable resolution to the satisfaction of all parties implicated by the relief requested herein. Among other efforts, on January 15, 2021, at 3:00pm, both Todd Logan and I met and conferred telephonically with Johanna Spellman (NCAA's counsel) via telephone on August 21, 2020. Such consultations did not produce a resolution.

s/Benjamin H. Richman