**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION-SINGLE SPORT/SINGLE SCHOOL (FOOTBALL) | ) ) ) ) ) ) ) ) ) ) ) ) ) | **MDL No. 2492**<br><br>**Master Docket No. 1:16-cv-08727**<br><br>**This Document Relates To:**<br>**Case No. 1:16-cv-09980**<br>**Case No. 1:17-cv-01402**<br>**Case No. 1:17-cv-04975**<br>**Case No. 1:17-cv-04978**<br><br>**Judge John Z. Lee**<br><br>**Magistrate Judge M. David Weisman** |

**RESPONSE OF THE NCAA TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Date: March 1, 2021

Mark S. Mester (IL Bar No. 6196140)
  mark.mester@lw.com
Johanna M. Spellman (IL Bar No. 6293851)
  johanna.spellman@lw.com
Robert C. Collins III (IL Bar No. 6304674)
  robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND .............................................................................. 3

    A.     The NCAA's Case-By-Case Approach To Discovery Is Proper ............................ 3

    B.     Plaintiffs Serve Overbroad Document Requests In The Four Sample Cases .......... 5

        1.     The NCAA Produced Documents In Response To <u>Rose</u> Request No. 24 ............................................................................................... 5

        2.     Plaintiffs Later Seek State Court Documents In <u>Langston</u>, <u>Richardson</u> And <u>Weston</u> .................................................................. 6

    C.     After Significant Delay, Plaintiffs Reject The NCAA's Reasonable Compromise Proposal ............................................................................ 7

III.   ARGUMENT ....................................................................................................... 12

    A.     Plaintiffs' Requests Seek Irrelevant Information.................................................. 12

    B.     The NCAA Has Not Waived Its General Objections. ......................................... 15

    C.     Producing State Court Discovery Would Impose Significant Burden On The NCAA ................................................................................................. 15

    D.     Plaintiffs' Requests are Overbroad And Duplicative........................................... 16

    E.     MDL Best Practices Do Not Require Production Of State Court Documents ............................................................................................... 19

IV.    CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Apotex v. Merck & Co.,
   229 F.R.D. 142 (N.D. Ill. 2005)..................................................................18

Capital Ventures v. J.P. Morgan,
   2014 WL 1431124 (D. Mass. 2014) ......................................................16, 20

Chen v. Ampco Sys. Parking,
   2009 WL 2496729 (S.D. Cal. 2009)......................................................12, 19

Dunlavey v. Takeda Pharm.,
   2012 WL 3715456 (W.D. La. 2012)............................................................19

E.E.O.C. v. Simply Storage,
   270 F.R.D. 430 (S.D. Ind. 2010)................................................................18

Fields v. Wright Med.,
   2017 WL 3048867 (N.D. Ind. 2017)...........................................................15

Forth v. Walgreen,
   2019 WL 10255628 (N.D. Ill. 2019) ..........................................................12

In re Gen. Motors,
   No. 1:14-md-02543 (S.D.N.Y. Sept. 24, 2014) .........................................20

Hughes v. Kore,
   731 F.3d 672 (7th Cir. 2013) ........................................................................3

King Cty. v. Merrill Lynch,
   2011 WL 3438491 (W.D. Wash. 2011).......................................................18

Kleen Prods. v. Packaging Corp.,
   2013 WL 120240 (N.D. Ill. 2013) ..............................................................18

Midwest Gas Servs. v. Indiana Gas,
   2000 WL 760700 (S.D. Ind. 2000) ........................................................13, 18

In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.,
   314 F.R.D. 580 (N.D. Ill. 2016)....................................................................4

New Jersey v. Sprint,
   258 F.R.D. 421 (D. Kan. 2009)...................................................................18

**Page(s)**

Perius v. Abbott Labs,
    2008 WL 3889942 (N.D. Ill. 2008) ..............................................................16

Peterson v. Wright Med.,
    2013 WL 655527 (C.D. Ill. 2013) ..............................................................13

Racing Optics v. Aevoe,
    2016 WL 4059358 (D. Nev. 2016) ..............................................................12

Sykes v. Target,
    2002 WL 554505 (N.D. Ill. 2002) ..............................................................12

In re Syngenta,
    No. 2:14-md-02591 (D. Kan. Oct. 21, 2015)..............................................20

In re Volkswagen,
    2017 WL 4680242 (N.D. Cal. 2017) ......................................................19, 20

Wollam v. Wright Med.,
    2011 WL 1899774 (D. Colo. 2011) ............................................................12

**RULES**

Fed. R. Civ. P. 23 ...........................................................................1, 4, 13, 17

Fed. R. Civ. P. 33(b)(4)...........................................................................15

Fed. R. Civ. P. 34(b)(2)(B) .......................................................................15

National Collegiate Athletic Association ("NCAA") respectfully submits this response to the motion to compel production of documents filed by Michael Rose, Timothy Stratton, Charles Marcus Langston, Danae Young, Jamie Richardson and Eric Weston ("Plaintiffs") in the four sample cases designated by Judge Lee in this multidistrict litigation ("MDL").[1]

## I.     INTRODUCTION

Plaintiffs seek to represent proposed classes of student-athletes who played football between 1952-2010 at the University of Florida, Pittsburg State University, Purdue University and Weber State University. In their respective pleadings, Plaintiffs seek damages for bodily injuries allegedly resulting from concussions and/or head injuries they and proposed class members may have sustained while playing college football.

Pursuant to the Court's Case Management Orders, discovery at this phase is focused on whether Plaintiffs' proposed classes can satisfy the class certification requirements of Federal Rule of Civil Procedure 23. See Case Mgmt. Schedule (MDL Dkt. 91) at 5-6; Case Mgmt. Order ("CMO") No. 8 (MDL Dkt. 259) at 3. Plaintiffs have, in turn, served requests for documents in all four sample cases, and the NCAA has served written objections and responses. At the same time, the NCAA has been making and continues to make rolling productions of documents in response to Plaintiffs' requests, with upwards of 77,000 pages of documents having been produced to date and many more documents to be produced in the near term. See Declaration of Johanna M. Spellman ("Spellman Decl.") ¶ 10.

These productions are in addition to the extensive record from the prior MDL before Judge Lee that involved the same bodily injury claims as are being pursued here. This record has been made fully available to Plaintiffs and their counsel in these actions and consists of upwards of 30,000 documents and 185,000 pages. See Spellman Decl. ¶ 16. Indeed, it was because an

---

[1] See Mot. to Compel (Dkt. 84); Richardson v. NCAA, No. 1:16-cv-09980 (N.D. Ill.); Mot. to Compel (Dkt. 74); Rose v. NCAA, No. 1:17-cv-01402 (N.D. Ill.); Mot. to Compel (Dkt. 73), Weston v. NCAA, No. 1:17-cv-04975 (N.D. Ill.); Mot. to Compel (Dkt. 73), Langston v. NCAA, No. 1:17-cv-04978 (N.D. Ill.).

extensive record already existed from the prior MDL that Judge Lee made clear at the outset of this MDL that the pre-existing record from the prior MDL should be used here and that "[a]ny duplication of discovery will be strongly disfavored." See CMO No. 4 (MDL Dkt. 1) at ¶ 10(d).

In their current motion, Plaintiffs misleadingly suggest that the NCAA has not produced any documents in this litigation that were produced in state court litigation related to head injuries in college football. That claim, however, is false. The NCAA has already produced over 10,000 documents—over 77,000 pages—relating to concussions in college football, most of which were previously produced in state court litigation. See Spellman Decl. ¶ 10. Further, as it has told Plaintiffs' counsel, the NCAA will produce responsive, non-privileged documents relating to head injuries and/or concussions in football during the class periods proposed in the sample cases, namely 1952-2010. Plaintiffs are thus receiving documents related to head injuries in football covering an almost 60-year period (to the extent documents responsive to Plaintiffs' requests dating back that far can be found after a good faith, reasonable search). Moreover, Plaintiffs and their counsel already have full access to the entire record in the prior MDL.

So what do Plaintiffs really seek in their motion? By requesting all documents produced in all football-related state court litigation, Plaintiffs seek documents outside the broad, nearly 60-year proposed class period, including documents created long after the proposed class period. They also seek documents relating to football programs at member institutions they did not play at as well as documents relating to head injuries in sports other than football, as some of the state court football cases involved the production of non-football documents. See Spellman Decl. ¶ 14. Moreover, other documents produced in the state court cases do not relate to concussions in college football at all. See id.

In a reasonable attempt to reach a fair compromise that would avoid burdening the Court with an unnecessary motion, the NCAA asked if Plaintiffs would consider an agreement that would allow both sides to use state court documents. Such an agreement would have allowed the NCAA

to use discovery obtained from state court plaintiffs, e.g., to help illustrate why bodily injury claims are not suitable for class treatment. But Plaintiffs cut off discussion, choosing to file this instant motion, which demands access to every document that the NCAA has produced in every state court case relating to football and head injuries.

As such, Plaintiffs' motion to compel should be denied. First, their request is not at all tailored to the issue of class certification, which is the express focus of discovery at this stage. Second, Plaintiffs' request would pose an inordinate burden on the NCAA, requiring it to produce millions of pages of duplicative documents and leading to enormous logistical challenges. Third, Plaintiffs' request is not limited to the sport, member institutions, or class period at issue in this "Single Sport / Single School" MDL. Finally, Plaintiffs' request is not consistent with MDL best practices or the purpose of discovery, let alone the Case Management Orders Judge Lee has already entered in this litigation, all of which were carefully tailored to the remaining issues in these cases and which likewise took full account of the fact that there already existed at the time this MDL was formed an enormous discovery record from the prior MDL.

## II.     FACTUAL BACKGROUND

### A.     The NCAA's Case-By-Case Approach To Discovery Is Proper

Plaintiffs' motion is premised (at least in part) on the assertion that there is something improper or even nefarious about the NCAA taking a case-by-case approach to responding to discovery requests in the various concussion-related state and federal court cases pending against it. As Plaintiffs note, dozens of individual (i.e., non-class) state court cases have been filed by former football players who played at various NCAA member institutions.[2] These cases have been

---

[2] Plaintiffs list some of these cases in Footnote 1 of their motion. See Mot. at 2 n.1. The number of state court cases, however, only further underscores why class certification is not appropriate here, where individual plaintiffs have ample incentives to bring their own lawsuits and there are attorneys willing to pursue those cases. See, e.g., Hughes v. Kore, 731 F.3d 672, 677 (7th Cir. 2013) ("[T]here is no indication that any member of the class in this case has a damages claim large enough to induce him to opt out and bring an individual suit for damages."). The fact that these state court plaintiffs chose to pursue claims outside the MDL process provides further support for keeping this MDL separate. Moreover, the fact that Plaintiffs and their counsel are now demanding every document produced by the NCAA in over 30 non-class cases underscores just how overbroad Plaintiffs' discovery requests really are.

3

filed in dozens of state courts and are, of course, subject to different rules of civil procedure, including rules governing discovery as well as privilege and work-product.  See, e.g., Geathers v. NCAA, No. 2019-CP-3800550 (Orangeburg County, South Carolina); Stensrud v. NCAA, No. BC719516 (Los Angeles, California); Ploetz v. NCAA, No. DC-17-00676 (Dallas, Texas).

State court plaintiffs have served requests for documents in those state court cases, and the NCAA has served written objections and responses, as is the NCAA's right under the different rules governing each state court case.  Plaintiffs also served requests for documents, first in Rose in November of 2018 and later in Richardson, Langston and Weston in August of 2020.  See Richman Decl. ¶ 4, Ex. 2 at 14-16.  As is its right under the Federal Rules, the NCAA served written objections and responses to Plaintiffs' document requests.  See id. Exs. 3, 5.

Plaintiffs use inflammatory rhetoric to describe the NCAA's approach of responding to discovery on a case-by-case basis, referring to a "concerted effort to wall off each state court case from one another, and then wall off all of those balkanized state court cases from this MDL."  See Mot. at 3.  But overheated rhetoric is all Plaintiffs provide—they do not cite a single case suggesting that responding to discovery served in a particular case in light of the claims asserted in that case and the rules governing that case is improper, let alone "gamesmanship."  See id. at 1. This would be true in any case, but it is all the more true in this litigation, given Judge Lee's prior rulings in this MDL as well as the prior MDL.[3]

---

[3] The genesis of this MDL was Judge Lee's conclusion in the prior MDL that a broad class waiver as part of the settlement in the prior MDL was not warranted, given the possibility that a single program at a single school could conceivably satisfy the requirement of Rule 23 for class certification, if that single program satisfied the commonality and predominance requirements (e.g., same coaches, methods, trainers, etc.) over a specified period of time.  See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig., 314 F.R.D. 580, 597 (N.D. Ill. 2016).  Without deciding the question even as to a single program at a single school and cautioning that "it would be extremely difficult, if not impossible" for Plaintiffs to satisfy Rule 23, Judge Lee concluded that he could not rule out such a possibility based on the limited record then before him, leading ultimately to this new MDL.  Id. at 596-97.  Accordingly, a school-specific and case-specific approach is very much called for here, as the whole point of the "single sport / single school" limitation was and is to focus on individual persons at individual institutions over finite periods of time.  See id. at 597.

**B.    Plaintiffs Serve Overbroad Document Requests In The Four Sample Cases**

Plaintiffs have been seeking documents regarding the state court cases since 2018.  Yet they waited until February of 2021 to file this motion.  In the time preceding this filing, however, the NCAA not only produced thousands of documents that it produced in the state court cases, but also proposed several compromises to Plaintiffs in an attempt to avoid burdening the Court with unnecessary motion practice.  See disc. infra at 7-11.

**1.    The NCAA Produced Documents In Response To Rose Request No. 24**

Plaintiffs Rose and Stratton served their first set of requests for the production of documents on the NCAA on November 9, 2018.  See Richman Decl. ¶ 4, Ex. 2.  Many requests sought documents relating to concussions and/or head injuries.[4]  In addition, Rose and Stratton sought, pursuant to Request No. 24, "[a]ll Documents [the NCAA] produced in any other civil action or any other action, investigation or proceedings Relating To Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders."  Id. at 15.  Notably, this request was not limited to state court cases involving football or even civil litigation.[5]

The NCAA lodged a number of objections to Request No. 24, including that it: (1) did not specify a relevant sport;[6] (2) sought documents regarding persons not included in Plaintiffs' proposed class definition; (3) sought documents regarding member institutions other than Purdue University; (4) was cumulative and duplicative of Plaintiffs' other requests; and (5) sought information unrelated to issues of class certification.  Subject to and without waiving those objections, however, the NCAA agreed to produce documents that have already "been produced

---

[4] See, e.g., Richman Decl. Ex. 2 at 10 (seeking, pursuant to Request No. 7, "All Documents You provided to Putative Class Members Relating To Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders"); id. at 12 (seeking, pursuant to Request No. 13, "Documents sufficient to Identify all NCAA rules and regulations, whether proposed or enacted, aimed at protecting NCAA football players from Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders").

[5] Plaintiffs appear to now concede the over-breadth of Rose Request No. 24, as their motion makes clear they are currently seeking only "documents the NCAA has already produced in parallel state court litigation regarding football head injuries."  Mot. at 1.

[6] See Richman Decl. Ex. 3 at 4 (General Objection No. 11:  "The NCAA further objects to the Requests to the extent they fail to specify a relevant sport or NCAA Division. The NCAA will therefore respond to the Requests as relating to Division I collegiate football.").

in other civil actions involving allegations of concussions, to the extent such documents are relevant to the present action."  See Richman Decl. Ex. 3 at 22.

Since serving its responses in Rose, the NCAA has produced more than 10,000 documents (and more than 77,000 pages) relating to head injuries and/or concussions.  See Spellman Decl. ¶ 10.  For example, it produced documents responsive to Plaintiffs' requests relating to head injuries and/or concussions among members of the proposed classes[7] and relating to its policies regarding head injuries and/or concussions in football during the proposed class periods.[8]  See id. ¶ 11.

Critically, the NCAA's production in Rose includes many, many documents that it also produced in the state court cases.  See Spellman Decl. ¶ 12.  As part of its document production process, the NCAA identified and reviewed—and continues to review—documents previously produced in concussion-related state court cases, and produces documents using Bates numbers related to the sample cases.  See id.  Thus, Plaintiffs' assertion that the NCAA "has yet to turn over even a single production from any prior cases" is misleading.  See Mot. at 4.  Moreover, Plaintiffs know this, because the NCAA repeatedly told them long before they filed their motion to compel.[9]

## 2. Plaintiffs Later Seek State Court Documents In Langston, Richardson And Weston

In August of 2020, Plaintiffs Langston and Young, Richardson and Weston each served a similarly broad document request on the NCAA, this time seeking all documents the NCAA produced in 13 state court cases listed in the request, as well as all documents the NCAA produced

---

[7] See, e.g., Richman Decl. Ex. 3 at 8-9 (agreeing to produce non-privileged documents responsive to Rose Request No. 4, which seeks "Documents sufficient to Identify each Putative Class Member who suffered or was reported to have suffered a Head Injury, Concussion Symptom, and/or Concussion-Related Disorder between 1952 and 2010").

[8] See, e.g., Richman Decl. Ex. 3 at 14-15 (agreeing to produce non-privileged documents during the proposed class period responsive to Rose Request No. 13, which seeks "all NCAA rules and regulations, whether proposed or enacted, aimed at protecting NCAA football players from Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders").

[9] See, e.g., Richman Decl. Ex. 6 at 2 ("The NCAA is including the documents it produced in concussion-related state court cases in its document collection for the Single Sport / Single School MDL sample cases."); Richman Decl. Ex. 9 at 1 ("As we have previously explained, the NCAA has already agreed to produce responsive, non-privileged documents related to head injuries and/or concussions in football during the class periods proposed in the Rose, Richardson, Langston and Weston cases.").

in "every other lawsuit initiated in state court against the NCAA between January 1, 2010 and the present alleging the NCAA's violation of a duty of care to one or more student-athletes, in relation to (i) the sport of football, and (ii) Head Injuries." See Richman Decl. Ex. 4 at 14-16. In lieu of this request, Plaintiffs offered to accept a sweeping, one-sided stipulation from the NCAA that would allow Plaintiffs to obtain documents from counsel representing plaintiffs in such state court cases and then use all such documents in the four sample cases. See id.

In its written responses served on September 23, 2020, the NCAA objected to Request No. 19 on several grounds, including that it: (1) did not specify a relevant sport;[10] (2) sought documents regarding persons not included in Plaintiffs' proposed class[es]; (3) sought documents regarding member institutions other than the relevant sample member institutions; (4) sought documents from outside the proposed class period; (5) was cumulative and duplicative of other requests; and (6) sought impermissible clone discovery. See Richman Decl. Ex. 5 at 21-22. As with its document production in Rose, however, the NCAA is identifying and reviewing documents it produced in concussion-related state court cases and, subject to its objections, will produce from those documents the non-privileged documents responsive to the written discovery requests served in Langston, Richardson, and Weston relating to concussions in football in general as well as documents regarding concussions in football that would apply to the sample case member institutions.[11] See Spellman Decl. ¶ 13.

### C. After Significant Delay, Plaintiffs Reject The NCAA's Reasonable Compromise Proposal

In their motion, Plaintiffs mischaracterize the parties' meet and confer process, selectively quoting from letters and misrepresenting the NCAA's continued efforts to resolve this dispute

---

[10] See Richman Decl. Ex. 5 at 4 (General Objection No. 13: "The NCAA further objects to the Requests to the extent they fail to specify a relevant sport or NCAA Division. The NCAA will therefore respond to the Requests as relating to Division I collegiate football."); id. at 21-22 (Request No. 19).

[11] Plaintiffs have also had full access to the entire discovery record in the prior MDL since 2017, consisting of 30,000 documents and over 185,000 pages. See Spellman Decl. ¶16.

through a reciprocal stipulation.  <u>See</u> Mot. at 6-8.  The details set forth below provide additional context in order to correct the false narrative in Plaintiffs' motion.

Four days after Plaintiffs served their first set of document requests in <u>Langston</u>, <u>Richardson</u> and <u>Weston</u>, Plaintiffs and the NCAA met and conferred—for the first time— regarding Plaintiffs' request for all documents the NCAA had produced in state court cases relating to head injuries.  <u>See</u> Spellman Decl. ¶ 3. The NCAA asked Plaintiffs' counsel how documents produced in state court cases relating to sports other than football and from outside the proposed class period in <u>Rose</u> could possibly be relevant to whether a proposed class consisting of football players at Purdue University could be certified.  <u>See id</u>.  In response, Plaintiffs' counsel claimed that such documents were relevant and asked NCAA's counsel if it would be producing documents in response to their requests.  <u>See id</u>.  Counsel for the NCAA said that as to <u>Rose</u> Request No. 24, it would follow-up in writing and as to <u>Langston</u>, <u>Weston</u> and <u>Richardson</u> Request No. 19, that request had been served only four days earlier and the NCAA would serve written objections and responses in due course.  <u>See id</u>.

On September 23, 2020, the NCAA served its responses and objections to Plaintiffs' document requests in <u>Langston</u>, <u>Weston</u> and <u>Richardson</u>.  <u>See</u> Richman Decl. Ex. 5.  Two days later, the NCAA sent a letter to Plaintiffs' counsel, explaining that it was including documents it had produced in concussion-related state court cases in its document collection for the four sample cases in this MDL.  <u>See</u> Richman Decl. Ex. 6 at 2.  Thus, subject to the NCAA's written objections, non-privileged documents that were produced in concussion-related state court cases and are responsive to the written discovery requests served in the sample cases have already been produced and are still being produced.  <u>See id</u>.  The NCAA explained, however, that there was "no justification for requiring the NCAA to reproduce all documents it produced in the state court cases, many of which involve sports other than football and almost all of which involve plaintiffs

who played at NCAA member institutions other than the four institutions attended by members of the proposed classes in the sample cases." Id.

In the interest of compromise, the NCAA also raised a counterproposal to the one-sided stipulation proposed by Plaintiffs in Langston, Richardson and Weston. Specifically, the NCAA asked if Plaintiffs and their counsel would be willing to consider an agreement:

> (i) that any documents produced by any plaintiff or third party in the state court cases could be accessed and used by any party in the MDL sample cases; (ii) that any deposition transcripts from the state court cases could be accessed and used by any party in the MDL sample cases; and (iii) that Plaintiffs' counsel will obtain from the state court plaintiffs and/or third parties whatever releases would be necessary to allow the MDL parties to access and use those documents and deposition transcripts.

Richman Decl. Ex. 6 at 4.

The NCAA then heard nothing from Plaintiffs on the issue for more than three months. See Spellman Decl. ¶ 6. Late in the day on New Year's Eve, Plaintiffs sent a letter raising various issues regarding the NCAA's discovery responses in Langston, Weston and Richardson, including the NCAA's objections to Request No. 19. See id. But Plaintiffs did not respond to the joint stipulation the NCAA raised in its September 25, 2020 letter, instead stating they intended to move to compel production of the state court documents "in the near future." See Richman Decl. Ex. 7.

During the parties' subsequent meet and confer on January 15, 2021, counsel for the NCAA noted that Plaintiffs had not responded to the NCAA's September 25, 2020 letter and asked if they would be willing to consider a stipulation facilitating both parties' use of documents from state court cases. See Spellman Decl. ¶ 7. In response, Plaintiffs expressed a willingness to negotiate a more narrow mutual stipulation allowing the NCAA access to productions of plaintiffs in state court cases where those plaintiffs are represented by Plaintiffs' counsel or a member of the Plaintiffs' Steering Committee ("PSC") established by Judge Lee. See id. But—puzzlingly—Plaintiffs also reiterated their intent to file a motion to compel within a week. See id.

On January 19, 2021, Plaintiffs' counsel sent an email to the NCAA, acknowledging their understanding that "your client may want to continue to try to negotiate some sort of private

agreement on this issue." <u>See</u> Richman Decl. Ex. 8. But despite this acknowledgement, counsel continued that "given our understanding of the nationwide landscape we do not believe those discussions are likely to prove productive." <u>Id</u>. Counsel for Plaintiffs then again reiterated their intention to "fil[e] a motion to compel as soon as this week." <u>Id</u>.

The next day, on January 20, 2021, the NCAA sent a letter to Plaintiffs in order to continue negotiating a potential stipulation. The NCAA noted it was puzzling that Plaintiffs continued to threaten filing a motion to compel imminently, given that "the parties are still conferring regarding a potential stipulation that might obviate the need for any such motion." <u>See</u> Richman Decl. Ex. 9 at 3. According to Plaintiffs, however, this letter suggested "that the NCAA was 'willing to consider' an agreement in which Plaintiffs could access state court documents provided that Plaintiffs' Counsel . . . would obtain from the state court plaintiffs and/or third parties whatever releases would be necessary to allow the parties in the sample cases to access and use those documents and deposition transcripts.'" Mot. at 7. But this is not what the NCAA proposed. In their motion, Plaintiffs mischaracterize NCAA's letter by misleadingly quoting from its September 25, 2020 proposal. The entire paragraph states as follows:

> <u>In its September 25, 2020 letter</u>, the NCAA nonetheless indicated that <u>it was willing</u> to consider a stipulation pursuant to which Plaintiffs could access the documents the NCAA produced in state court concussion-related cases and use them in the sample cases, provided that the stipulation would be reciprocal. Specifically, we asked if Plaintiffs would be willing to consider an agreement: (i) that any documents produced by any plaintiff or third party in the state court cases could be accessed and used by any party in the sample cases; (ii) that any deposition transcripts from the state court cases could be accessed and used by any party in the sample cases; and (iii) that Plaintiffs' counsel will <u>obtain from the state court plaintiffs and/or third parties whatever releases would be necessary to allow the parties in the sample cases to access and use those documents and deposition transcripts</u>.

Richman Decl. Ex. 9 at 2 (emphasis added).

In the subsequent paragraphs—which Plaintiffs omit from their motion entirely—the NCAA acknowledged Plaintiffs' rejection of that September 25, 2020 proposal and expressed a willingness to continue negotiating a more narrow stipulation. <u>See id</u>. at 3.

On January 27, 2021, the NCAA sent Plaintiffs a proposal to facilitate both parties' use of state court documents in the MDL, incorporating Plaintiffs' agreement to permit the use of documents produced by state court plaintiffs who are represented by Plaintiffs' lead counsel or any firm on the MDL PSC. See Richman Decl. Ex. 11. The NCAA proposed as follows:

> The NCAA will agree to produce non-privileged documents from state court cases filed since 2010 that are related to head injuries in football, to the extent those documents: (i) relate to head injuries and/or concussions in football—or head injuries and/or concussions generally (i.e., not specific to any sport); (ii) fall within the proposed sample case class time periods (1952 to 2010); and (iii) have not already been produced in the four sample class actions. The NCAA will agree to produce such documents regardless of whether they are responsive to any of Plaintiffs' other discovery requests or whether they relate to the sample case member institutions.
>
> . . .
>
> Plaintiffs will agree that the NCAA can use the plaintiffs' productions from state court cases filed since 2010 related to head injuries in football where the plaintiffs are represented by Edelson PC or any law firm with a member on the Plaintiffs' Steering Committee as if those documents were produced in the four sample cases.

Id. at 1-2. In making this proposal, the NCAA was willing to accept that the stipulation would not allow it to use documents produced by plaintiffs in the state court football-related cases where plaintiffs are not represented by counsel on the MDL PSC, even though Plaintiffs would be able to use documents the NCAA produced in those cases. See id.

Instead of responding to this proposal in substance, Plaintiffs emailed the NCAA on February 5, 2021, stating their "patience with this process has run out" and that they would be filing a motion to compel that same day. See Spellman Decl., ¶¶ 8-9, Ex. A. Plaintiffs again misrepresented the NCAA's offer, asserting that the NCAA's proposal would "require us to obtain agreements from dozens of plaintiffs in actions our firm is not involved in and—to the best of my knowledge—many of which we may not even know about." Id., Ex. A. In fact, the NCAA's proposal would have allowed the NCAA to use only documents produced by state court plaintiffs who were represented by Plaintiffs' lead counsel and law firms with members on the PSC.

Plaintiffs are right—enough is enough. See Mot. at 8. Their continued rejection and now misrepresentations of the NCAA's offer for mutual use of the state court documents makes one

thing clear: Plaintiffs are determined to gain the unilateral right to broad swaths of irrelevant and duplicative discovery from the state court cases. As such, Plaintiffs' motion should be denied.

## III. ARGUMENT

Documents requested by Plaintiffs must be relevant to or likely to lead to the discovery of admissible evidence for the claims at issue in the four sample cases (i.e., claims related to head injuries/concussions allegedly sustained by student-athletes who played football at the four sample case member institutions between 1952-2010). See, e.g., Sykes v. Target, 2002 WL 554505, at *3 (N.D. Ill. 2002). Moreover, discovery at this stage is expressly focused on whether the claims of the proposed classes of football players who played at the member institutions involved in the four sample cases should be certified. See Case Mgmt. Schedule (MDL Dkt. 91) at 5-6.

Because Plaintiffs "are the moving party, they bear the initial burden of establishing the relevance of the documents that they seek to compel." See Forth v. Walgreen, 2019 WL 10255628, at *4 (N.D. Ill. 2019) (denying motion to compel production of all documents produced to government in qui tam litigation for failure to demonstrate relevance). In this instance, the Court should deny Plaintiffs' motion because it seeks irrelevant information that would be unduly burdensome to produce and that is untethered to the issue of class certification.

### A. Plaintiffs' Requests Seek Irrelevant Information

The NCAA has offered a reasonable compromise to facilitate the mutual use in this MDL of relevant state court documents. See disc. supra at 7-12. Plaintiffs' rejection of this compromise and insistence on obtaining "any and all documents" that have been produced in state court litigation makes clear they are impermissibly "attempting to clone the discovery taken by others" and "piggyback on that unrelated discovery." See Wollam v. Wright Med., 2011 WL 1899774, at *1 (D. Colo. 2011). Such requests, however, are routinely rejected.[12]

---

[12] See, e.g., Racing Optics v. Aevoe, 2016 WL 4059358, at *1 (D. Nev. 2016) ("'Piggyback' discovery requests are prohibited. The fact that [a party] 'produced certain documents in the [other] cases does not necessarily make them discoverable in this case.'"); Chen v. Ampco Sys. Parking, 2009 WL 2496729, at *2 (S.D. Cal. 2009) (plaintiff's identification of similarities between cases is not enough to require a carte blanche production of documents from another case).

Indeed, the cases Plaintiffs cite make clear that clone discovery is proper only where the request "seeks information that is relevant to plaintiff's claims and defendants' defenses."  Mot. at 17 (citing Peterson v. Wright Med., 2013 WL 655527, at *6 (C.D. Ill. 2013))[13]; see also Midwest Gas Servs. v. Indiana Gas, 2000 WL 760700, at *1 (S.D. Ind. 2000) ("[C]loned discovery . . . is irrelevant and immaterial unless [the discovery] is relevant to the subject matter of the instant case.").  Plaintiffs argue that Rose Request No. 24 and Langston, Richardson and Weston Request No. 19 are "clearly relevant to the MDL Plaintiffs' cases," because Request No. 19 seeks documents from state court cases where the NCAA was sued in relation to "(i) the sport of football, and (ii) Head Injuries"[14] and because those cases involve "precisely the same factual and legal questions as this MDL does."  Mot. at 9.  Plaintiffs' argument, however, fails.

The requested state court cases do not involve "precisely the same factual . . . questions as the MDL."  Mot. at 9.  The millions of pages of documents produced in the football- and concussion-related state court cases include merits-related documents from outside the four proposed class periods, as well as many documents relating to sports other than football at the four sample case member institutions.  See Spellman Decl. ¶ 14; Richman Decl. Ex. 6 at 3.  Nor do the state court cases involve "precisely the same…legal questions at the MDL."  Mot. at 9.  These cases were brought in different jurisdictions, involve different student-athletes, include different state law claims, and are subject to different discovery rules, requests, and protective orders.  The documents Plaintiffs seek are irrelevant to whether the claims of the proposed classes of football players who played at the member institutions for the four sample cases can satisfy Rule 23.

In addition, to the extent that documents produced by the NCAA in the state court cases are relevant to class certification, Plaintiffs are already receiving those documents.  The NCAA is

---

[13] In addition, in Peterson, the plaintiffs sought in merits discovery only the production of expert reports from prior litigation on a product defect, as opposed to seeking all documents produced in prior litigation.  See Peterson, 2013 WL 655527, at *6.  Though the court allowed plaintiff to access some of these reports, it limited the production to those reports that pre-dated plaintiff's alleged injury by two years, even though plaintiff had requested reports twenty years older.  See id. at *5.

[14] Notably, Rose Request No. 24 is not limited to football or head injuries.  See Richman Decl. Ex. 3 at 22.

reviewing the documents it produced in state cases in order to prepare its MDL productions.  See Spellman Decl. ¶¶ 12-13. Indeed, pursuant to the discovery requests in the sample cases, Plaintiffs will receive documents relating to football and falling within the proposed class period regarding: (1) "the NCAA's knowledge of relevant head injury risks at various times;"[15] (2) "NCAA's rulemaking related to the prevention or reduction of head injuries at various times;"[16] and (3) "the representations the NCAA may have made to both student-athletes and their universities related to head injury risks and the NCAA's responsibility to limit them."[17]  Mot. at 10.

Plaintiffs have made no showing that the additional documents they are seeking— documents unrelated to football or the member institutions where they played and that are outside the proposed class period dates—are or can be relevant to this litigation.[18]  Plaintiffs accuse the NCAA of "gamesmanship" in attempting to keep these documents separate (see Mot. at 1), but there is nothing nefarious about objecting to discovery irrelevant to class certification in the four sample cases.  Indeed, Judge Lee already recognized that "[t]o the extent that Single Sport/Single School tag-along cases involve a sport other than football," additional sport-by-sport dockets should be underlined created.  See CMO No. 4 (MDL Dkt. 1) at 2-3.[19]

---

[15] For example, the NCAA agreed, subject to its objections, to produce non-privileged documents during the proposed class period that "relate to head injuries, concussions or concussion symptoms" in response to Rose Request No. 14, which seeks "Documents sufficient to Identify Your knowledge Relating To Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders, Including case studies, manuals, memoranda, meeting minutes, presentations, publications, and handbooks."  Richman Decl. Ex. 3 at 15.

[16] The NCAA agreed, subject to its objections, to produce non-privileged documents during the proposed class period responsive to Rose Request No. 11, which seeks "Documents sufficient to Identify each version of Your policies, procedures, and guidelines Relating To preventing, identifying, reporting, and treating Head Injuries, Concussion Symptoms, and/or Concussion-Related Disorders implemented."  Id. at 13-14.

[17] The NCAA agreed, subject to its objections, to produce non-privileged documents from the proposed class period responsive to Richardson Request No. 11, which seeks "All Communications by You during the Relevant Time Period to or with the University of Florida and/or University Personnel Relating To any of Your policies, procedures, and guidelines regarding preventing, Identifying, reporting, evaluating, monitoring, and treating Head Injuries and Concussion Symptoms."  Richman Decl. Ex. 5 at 15.

[18] It is likewise unclear how documents about sports other than football—such as women's lacrosse—might bear on issues such as "whether the NCAA owed a common duty of care to collegiate football players in relation to Head Injuries" or " the NCAA's on-campus presence in support of its governance of collegiate football at various times."  Mot. at 10.

[19] Plaintiffs attempt to get around this order by claiming that the production of all state court documents would be more "efficient," even if  such a production includes documents related only to merits-based

14

### B. The NCAA Has Not Waived Its General Objections

In their motion, Plaintiffs claim that the NCAA has waived its General Objections, asserting the General Objections are "boilerplate" and violate Rule 33(b)(4). See Mot. at 11. But the NCAA's General Objections, for example, set forth detailed objections to defined terms that are used throughout Plaintiffs' document requests. Far from boilerplate, these General Objections "state[] with specificity" the basis for the NCAA's objections to these definitions.[20] See Fed. R. Civ. P. 33(b)(4). Rather than repeat objections to Plaintiffs' defined terms, the NCAA objected in the General Objections and then incorporated the objection in response to each request that used the term.[21] Plaintiffs do not cite a single case suggesting this approach violates Rule 34(b)(2)(B).

### C. Producing State Court Discovery Would Impose Significant Burden On The NCAA

Plaintiffs further assert that it "presents virtually no burden" for the NCAA to produce documents produced in football- and concussion- related state court cases, because the documents are supposedly "at its fingertips." Mot. at 12. In support of this claim, Plaintiffs note that the NCAA has retained coordinating counsel and that its document productions from each state court case are easily accessible. See id. But the fact the requested documents are accessible and producing them may be "less burdensome" does not entitle Plaintiffs to these documents "merely because [they have] been produced in other cases." See Fields v. Wright Med., 2017 WL 3048867, at *3 (N.D. Ind. 2017) (denying motion to compel where "defendants have already produced much

---

issues. See Mot. at 10. But Plaintiffs cannot attempt to re-litigate the structure of this MDL simply because, in hindsight, they do not like its terms. In any event, Plaintiffs offer no explanation as to how the parties would separate "merits-related documents mixed in" with documents relating to class-certification. See id.

[20] For example, General Objection No. 5 states: "The NCAA further objects to the definitions of 'Concussion Symptom,' 'Concussion-Related Disorder' and 'Head Injury' as set forth in the Requests as (a) vague, ambiguous and/or otherwise incapable of reasonable ascertainment, particularly as the interpretations of concussion symptoms, concussion-related disorders and head injuries have evolved significantly over time and (b) overly broad, unreasonable and unduly burdensome, such that their use results in an overly broad demand for information that may encompass general information concerning depression, neurological issues and mental health issues of a general nature, as well as heat exhaustion, stroke and other medical symptoms which are generally not associated with events of the type alleged by Plaintiff." Richman Decl. Ex. 5 at 3.

[21] See, e.g., Richman Decl. Ex. 5 at 21-22 (incorporating, in response to Request No. 19, the NCAA's General Objections to the terms "Communication," "Document," "Concussion Symptom," "Concussion-Related Disorder" and "Head Injury").

of the requested information in other similar cases"). And even if this argument otherwise had merit, Plaintiffs grossly oversimplify the burden associated with their request.

While the NCAA may be able to access the prior state court productions, many of these documents have been reproduced multiple times, in response to discovery requests issued in connection with the more than 30 state court cases involving concussions in football. See Spellman Decl. ¶ 15. Thus, producing all documents produced in all state court football cases would amount to producing millions of pages of mostly duplicative documents, under different Bates numbers, that are subject to different protective orders in different jurisdictions.[22] See id. This would significantly complicate the management of the document productions in the four sample cases, making depositions, trial preparation and the remaining discovery unnecessarily difficult and expensive.[23] For example, in order for the NCAA (and Plaintiffs) to prepare witnesses for depositions, millions of pages of documents would need to be evaluated in order to identify the relevant materials and weed out duplicative and irrelevant materials. Although Plaintiffs' proposed unilateral stipulation might alleviate the burden on the NCAA of having to produce these duplicative documents, it would only exacerbate the ensuing case management problems.

### D. Plaintiffs' Requests are Overbroad And Duplicative

The scope of discovery in this case is focused on whether the classes proposed by Plaintiffs in each of the four sample cases—proposed classes consisting of football players at Purdue

---

[22] See, e.g., Perius v. Abbott Labs, 2008 WL 3889942, at *5 (N.D. Ill. 2008) (denying motion to compel production of all documents produced in government investigation where "[i]f permitted, that discovery would overwhelm discovery relating to [plaintiff's] claims"); Capital Ventures v. J.P. Morgan, 2014 WL 1431124, at *1 (D. Mass. 2014) (denying motion to compel because "plaintiff's request encompasses more than 150 million pages of documents and 153 deposition transcripts, the production of which would impose significant burdens on defendants").

[23] Indeed, in Geathers v. NCAA, No. 2019-CP-3800550 (Orangeburg County, SC), and Hamlin v. NCAA, No. 2019-CP-16-0 (Darlington County, SC), after the plaintiffs obtained an order compelling the NCAA to produce documents that were produced in other state court cases, plaintiffs complained that they were unable to find documents related to certain claims in the massive production (a production they moved to compel). See Richman Decl. Ex. 7. They then demanded that the NCAA parse through the voluminous production and identify documents relevant to their claims. See id. But all parties here can avoid the unnecessary burden associated with a massive "document dump," as the NCAA is already producing non-privileged documents relevant to the sample cases that were produced in state court litigation.

University, Pittsburg State University, the University of Florida and Weber State University who played between 1952-2010—can possibly satisfy Rule 23 and be certified. See Case Mgmt. Schedule (MDL Dkt. 91) at 5-6; CMO No. 8 (MDL Dkt. 259) at 3. Plaintiffs' request for state-court documents outside of that scope is improper, and their request for football and head-injury documents already produced in state court cases is duplicative.

Once again, Plaintiffs pronounce that their requests focus only on state cases involving head injuries and football. See Mot. at 13. Once again, however, documents produced in those cases are not limited to football or the proposed class period in the sample cases nor was any of the discovery in any of the state court cases limited to documents and information that bear upon Rule 23 and the propriety of class treatment, since none of the state court cases were class actions. Accordingly, Plaintiffs make no argument as to why they are entitled to documents unrelated to football. Nor could they, given Judge Lee's order regarding the single sport nature of this MDL. See CMO No. 4 (MDL Dkt. 1) at 2-3. Instead, Plaintiffs claim they are entitled to "policy document[s] relating to football head injuries in a state case involving a college not involved in any of the Sample Cases." Mot. at 13. The NCAA, however, is producing policy documents related to football head injuries applicable to all NCAA member institutions, which includes the sample schools, in this MDL. See Spellman Decl. ¶ 13.

Plaintiffs also claim they are entitled to discovery outside the proposed class period. In support, Plaintiffs reference a publically-available 1933 NCAA handbook and theoretical 2012 statements from the NCAA "about its prior knowledge, policies, and practices regarding head injuries." Mot. at 14. Plaintiffs summarily assert that this evidence might be relevant to potential certification of "fraudulent concealment" classes and "the potential need for subclasses," but provide no explanation as to how, which is not surprising given their proposed class period ends in 2010.[24]

---

[24] Plaintiffs' citation to Kleen Products is distinguishable. Mot. at 14. There, the court held that a "larger window of economic data (as opposed to conduct documents) is warranted in order to provide an accurate

Plaintiffs make a related claim that their requests seek documents "likely" related to both class certification as well as merits-related issues and that this overlap "cannot be helped." Mot. at 14-15. But Plaintiffs cannot simply rely on the fact these documents are "likely" to contain materials relevant to class certification; "they must make proper requests describing the information in which they are interested. The plaintiffs' counsel must do their own work and request the information they seek directly." See Midwest Gas, 2000 WL 760700, *1 (denying request for "any and all documents received from or provided to the [DOJ]" in suit alleging antitrust violations).[25]

Finally, Plaintiffs claim that although "there may be overlap between the documents produced in the state court cases and the documents produced in the MDL," Plaintiffs have no way of "knowing how much overlap there is." Mot. at 15. Plaintiffs assert the NCAA's objection that Plaintiffs' requests for all state court productions are duplicative of other discovery requests is itself meritless. On the contrary, Plaintiffs' assertion that the NCAA is engaging in a "one-sided approach" to discovery is the meritless claim. It is always the case that the party producing documents has more information about its documents than the receiving party.[26] There is no

---

economic picture," but required production be tied to the time alleged in the complaint. See Kleen Prods. v. Packaging Corp., 2013 WL 120240, at *9 (N.D. Ill. 2013) (emphasis added); see also New Jersey v. Sprint, 258 F.R.D. 421, 447 (D. Kan. 2009) (denying motion to compel "all documents relevant to the Class Period, not just those created within the Class Period," where committee minutes pre-dated class).

[25] See also King Cty. v. Merrill Lynch, 2011 WL 3438491, at *3 (W.D. Wash. 2011) ("It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses."). Plaintiffs make the related argument that it would be "more burdensome on the NCAA to parse the state court production to produce some documents now and other documents at a later phase of discovery." Mot. at 15. The NCAA is not "parsing" the state court documents; it is including them as part of documents collected in connection with its MDL document review process. See Spellman Decl. ¶¶ 12-13. This process is far less burdensome than producing all state court documents in this case and determining, on the back-end, which information can be used in connection with class certification.

[26] See E.E.O.C. v. Simply Storage, 270 F.R.D. 430, 436 (S.D. Ind. 2010) ("Lawyers are frequently called upon to make judgment calls—in good faith and consistent with their obligations as officers of the court—about what information is responsive to another party's discovery requests."); Apotex v. Merck & Co., 229 F.R.D. 142, 148 (N.D. Ill. 2005) ("Absent such a [discovery] request or requirement, a civil litigant has no independent obligation to volunteer information to its opponent.").

18

federal rule requiring a party to produce all documents it produced in related litigation; unsurprisingly, Plaintiffs cite no rule or precedent stating otherwise. Although it may be more efficient "for a defendant to 'open up [its] document repositories for the opposing side to rifle through" this practice "would expand the scope of discovery beyond that allowed by the Federal Rules." In re Volkswagen, 2017 WL 4680242, at *2 (N.D. Cal. 2017).

### E.  MDL Best Practices Do Not Require Production Of State Court Documents

Finally, Plaintiffs argue that their requests are consistent with MDL Best Practices. See Mot. at 15. Not so. Although MDL Practice 6H—which is not authoritative legal or administrative policy—encourages "coordination" of the MDL litigation process (see Mot. at 16), that principle is not synonymous with permitting discovery of irrelevant material. Indeed, Best Practice 1D states that "[c]lass actions may require a different approach to discovery because of the need to resolve class-certification issues as early as practicable," which is exactly what Judge Lee has required in this MDL. See Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs (Second), Bolch Judicial Inst. (Sept. 2018) at Chapter 4, p. 15. The value of coordinating discovery as between this MDL and state court cases does not displace the relevance requirement in the Federal Rules or other competing considerations that factor into discovery. For example, courts have decided against allowing carte blanche document production between state cases and federal MDLs where the requested productions are irrelevant.[27]

Nor will combining discovery at this stage of the MDL "reduce costs, delays, and [the] duplication of effort." Mot. at 17 (quoting Dunlavey v. Takeda Pharm., 2012 WL 3715456, at *2 (W.D. La. 2012)). There is no common document repository in the state court cases, as is the

---

[27] See, e.g., In re Volkswagen, 2017 WL 4680242, at *2 (denying motion to compel documents produced in MDL where plaintiffs "have not explained how the entire MDL Production is relevant to a claim or defense in their case"); Chen, 2009 WL 2496729, at *2 ("Although Plaintiff identifies certain similarities between the state cases and this case, such similarities are not enough to require a carte blanche production of all documents from the state cases.").

circumstance in many of the cases cited by Plaintiffs.[28]  Nor would such a repository make sense given the myriad injuries, sports programs, member institutions and time periods at issue in the state court cases, not to mention the vastly different rules and laws that apply to cases pending in dozens of different courts across 15 states.  Plaintiffs provide no explanation for how this approach would be consistent with the Single Sport / Single School format of this MDL.  See CMO No. 4 (MDL Dkt 1) at 2-3.[29]  Instead, Plaintiffs rely on their assertion that unless the NCAA is ordered to produce every document from the related state court cases, it will "pick and choose which documents it provides in which cases."  Mot. at 18.  Plaintiffs take issue with the normal discovery process.  But there is nothing improper about the NCAA reviewing documents in response to specific requests in discrete litigations and then producing responsive documents in that discrete litigation under the rules governing each discrete proceeding.

In short, Plaintiffs seek an order compelling the NCAA to reproduce millions of pages of documents, many of which are irrelevant to class certification, and many others that will be reproduced dozens of time.  This process is far from efficient nor is it at all consistent with the purpose of discovery or with Judge Lee's prior directives.  See In re Volkswagen, 2017 WL 4680242, at *2; Capital Ventures, 2014 WL 1431124, at *1.

## IV.  CONCLUSION

For the foregoing reasons, the NCAA respectfully requests that the Court deny Plaintiffs' pending motion to compel.

---

[28] See, e.g., Joint Coordination Order (Dkt. 315) at 3, In re Gen. Motors, No. 1:14-md-02543 (S.D.N.Y. Sept. 24, 2014) ("Lead Counsel shall create a single electronic document depository for use of all MDL counsel as well as counsel in Coordinated Actions . . ."); Coordination Order (Dkt. 1099) at 5, In re Syngenta, No. 2:14-md-02591 (D. Kan. Oct. 21, 2015) ("Lead MDL Counsel shall create a single document depository for use by all Plaintiffs' counsel as well plaintiffs' counsel in Related Actions . . .").

[29] Indeed, the Court explicitly implemented document-sharing procedures where aligned with the single-sport purpose of this litigation—Plaintiffs have access to approximately 30,000 documents produced previously in the earlier MDL.  See CMO No. 4 (MDL Dkt. 1) at ¶ 10(d); see also Nov. 30, 2016 Hr'g Tr. (MDL Dkt. 101) at 20-22 (Judge Lee ordering that all parties have access to the Arrington record).

Date:  March 1, 2021                               Respectfully submitted,

                                                  /s/ *Johanna M. Spellman*
                                                  Johanna M. Spellman, One of the Attorneys for
                                                  Defendant National Collegiate Athletic Association

Mark S. Mester (IL Bar No. 6196140)
   mark.mester@lw.com
Johanna M. Spellman (IL Bar No. 6293851)
   johanna.spellman@lw.com
Robert C. Collins III (IL Bar No. 6304674)
   robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

## <u>CERTIFICATE OF SERVICE</u>

I, Johanna M. Spellman, hereby certify that on March 1, 2021, a true and correct copy of the foregoing was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

Date:  March 1, 2021

*/s/ Johanna M. Spellman*
Johanna M. Spellman, One of the Attorneys for
Defendant National Collegiate Athletic
Association

Johanna M. Spellman (IL Bar No. 6293851)
  johanna.spellman@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767